UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE HERBAL CHEF, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AFG DISTRIBUTION, INC., a North Carolina Corporation; JAMES MAGURA, an individual,<br><br>Defendants. | Case No. 2:18-cv-8539-AB-MRW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [52]** |

On December 27, 2019, defendants AFG Distribution, Inc. and James Magura (collectively, "Defendants") filed a motion for summary judgment ("Motion" or "Mot.") against plaintiff The Herbal Chef, LLC ("Plaintiff" or "The Herbal Chef"). Dkt. No. 52.

Plaintiff filed an opposition ("Opposition" or "Opp.") on January 10, 2020. Dkt. No. 58. Defendants filed a reply ("Reply") on January 17, 2020. Dkt No. 60.

The Court held oral arguments on March 6, 2020 and took the matter under submission. Dkt. No. 63.

For the following reasons, the Court **GRANTS** the Motion.

1.

## I. BACKGROUND[1]

Chris Sayegh is a chef who is the founder and owner of "The Herbal Chef," a California limited liability company providing culinary services since 2014. SGD 3; SSF 3.[2] The Herbal Chef primarily provides private dining and catering services incorporating cannabis and other herbs. SGD 3; SSF 3. The Herbal Chef also promotes education and awareness regarding cannabis and consults other food and beverage companies regarding same. SGD 3. The Herbal Chef has been featured in national publications and conferences. SGD 3.

Defendant AFG Distribution, Inc. is a North Carolina corporation that promotes and sells some of its cooking products under the moniker "Herbal Chef." *See* Defs.' Trademark Registration, Dkt. No. 52-6, Ex. 5. Defendants filed a trademark application for "Herbal Chef" on October 22, 2014 that was later abandoned. SSF 7. On February 10, 2016, Defendants filed another trademark application for "Herbal Chef" and a trademark was issued by the United States Patent and Trademark Office ("USPTO") on September 20, 2016. SSF 9. Defendants' trademark pertains to the following classes: (1) International Class 21—"Baking dishes; Pot holders; Trivets," and (2) International Class 7—"Electric food processors." *See* Defs.' Trademark Registration, Dkt. No. 52-6, Ex. 5.

On October 6, 2017, Plaintiff filed a trademark application with the USPTO for the mark THE HERBAL CHEF. *See* Pl.'s Trademark Application, Dkt. No. 52-6, Ex. 9. The application is for International Class 043—"meal preparation, catering services, private dining." *Id.* Plaintiff first used the mark THE HERBAL CHEF in commerce in August 2015. SSF 1.

On May 15, 2018, the USPTO denied Plaintiff's application. *See* May 15, 2018

---

[1] The Court's factual recitation construes conflicting evidence in Plaintiff's favor and does not represent the Court's view of the weight or credibility of the evidence.
[2] "SGD" refers to Plaintiff's Statement of Genuine Disputes of Material Fact. Dkt. No. 59. "SSF" refers to Defendants' Statement of Uncontroverted Facts. Dkt. No. 53.

USPTO Office Action, Dkt. No. 52-4. In its denial, the USPTO wrote, "Registration is refused because the applied-for-mark merely describes a feature, characteristic, function, quality, ingredient, purpose or use of applicant's services." *Id.* at p. 4.

On December 4, 2018, the USPTO wrote in conjunction with a subsequent denial of the same application:

> Applicant argues that the applied-for mark is not merely descriptive in light of the description of services because applicant's services do not relate to cooking with herbs. This argument is not persuasive because "herb" is a slang term for marijuana… and applicants educational and entertainment services related to cooking infused with marijuana. Moreover, applicant describes the services as a "herbal experience" and applicant as a "cannabis cooking chef…" Thus, consumers encountering applicant's mark in the context of the services "providing educational and entertainment services related to cooking, namely, speaking engagements covering recipe development, baking, food preparation, catering, consultation in the field of special event planning for dining, catering and cooking purposes as it relates to infused cooking" will immediately understand that applicant's services are provided by a "chef" who specializes in cooking with infused marijuana.

*See* Dec. 4, 2018 USPTO Office Action, Dkt. 52-6, Ex. 7.

Plaintiff claims that Defendants first infringed on the mark THE HERBAL CHEF in January 2016 when Defendants distributed a nationwide catalogue depicting cooking products under the "Herbal Chef" brand. SSF 6. Defendants' first sale of products under the "Herbal Chef" brand likewise occurred in January 2016. SSF 6.

Plaintiff alleges that Defendants' sale and marketing of "Herbal Chef" products constitutes trademark infringement and asserts the following causes of action: (1) violation of Lanham Act, 15 U.S.C. §1125(a); (2) violation of California unfair competition law, Cal. Bus. & Prof. Code §17200; (3) trademark infringement; and (4) unfair competition. Compl. ¶¶ 23-45, Dkt. No. 1.

## II. SUMMARY JUDGMENT LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id*. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255).

Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III. DISCUSSION

As an initial matter, the parties agree that each of Plaintiff's causes of action hinge on Plaintiff's ownership of a protectable trademark and are therefore subject to the same analysis for purposes of adjudicating the Motion. Compl. ¶¶ 23-45; Mot. at pp. 12-19; Opp. at pp. 9-16; 15 U.S.C. § 1114(1); *Lahoti v. VeriCheck, Inc.,* 586 F.3d 1190, 1197 (9th Cir. 2009) (to state a claim under 15 U.S.C. § 1114(1), plaintiff must prove ownership of a valid mark); 15 U.S.C. § 1125(a); *Int'l Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 917 (9th Cir. 1980) (test for claims under 15 U.S.C. §§ 1114 and 1125(a) are the same); *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1153 (9th Cir. 2002) (dismissing claims under California's UCL as "substantially congruent" to claims under the Lanham Act) (internal quotation marks and citations omitted); *see also Filipino Yellow Pages, Inc., v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1145 (9th Cir. 1999) (analyzing federal trademark infringement and unfair competition claims and related state law trademark claims together based on single question of genericness); *Glow Indus., Inc. v. Lopez,* 252 F.Supp.2d 962, 975 n. 90 (C.D. Cal. 2002) (standard under Lanham Act for trademark infringement and unfair competition is the same, and actions under California's UCL for state claims for trademark infringement and unfair competition are "substantially similar to" comparable federal claims).

Defendants argue they are entitled to summary judgment because the mark THE HERBAL CHEF is generic and, thus, not entitled to trademark protection. Mot. at pp. 12-15. Defendants alternatively argue that, even if the mark is descriptive, it is not protectible because Plaintiff cites no evidence of secondary meaning. *Id.* at pp. 16-19.

Plaintiff responds that the mark THE HERBAL CHEF is neither generic nor descriptive but, rather, persuasive and, thus, automatically entitled to trademark protection. Opp. at pp. 9-16.

The Court addresses each issue in turn.

**A. The Ninth Circuit's test for trademark distinctiveness**

"To be valid and protectable, a mark must be 'distinctive.'" *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). Distinctiveness measures "the primary significance of the mark to the purchasing public." *Quiksilver, Inc. v. Kymsta Corp.,* 466 F.3d 749, 760 (9th Cir. 2006) (quotation marks omitted).

Trademarks are generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Zobmondo Entm't, LLC*, 602 F.3d at 1113. Marks that are suggestive identify a product's source and are entitled to automatic protection. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005). "[D]escriptive marks, which describe the qualities or characteristics of a product, may be registered only if the holder of the mark shows that the mark has acquired distinctiveness through secondary meaning." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 602 (9th Cir. 2005).

"Generic marks lack any distinctive quality, and therefore are not entitled to trademark protection." *Yellow Cab Co. of Sacramento*, 419 F.3d at 928 (citing *Interstellar Starship Servs., Ltd. v. Epix, Inc.,* 304 F.3d 936, 943 n. 6 (9th Cir. 2002)). A term is not generic if the "significance of the term in the minds of the consuming public is not the product but the producer." *Anti–Monopoly, Inc. v. Gen. Mills Fun Grp.,* 611 F.2d 296, 302 (9th Cir. 1979).

Here, both parties analyze the distinctiveness of the mark THE HERBAL CHEF using the Ninth Circuit's "who-are-you/what-are-you" test. *Filipino Yellow Pages, Inc.,* 198 F.3d at 1147. Under this test, "[a] mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you.'" *Id.* (quoting *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1391 (9th Cir. 1993)).

It is undisputed that Plaintiff owns no registered trademark. SSF 2. Thus, "the presumption of validity does not apply" and Plaintiff must satisfy "its burden of proof

6.

of establishing a valid mark…" *Yellow Cab Co. of Sacramento*, 419 F.3d at 927.

**B. The mark THE HERBAL CHEF is, at most, descriptive.**

Defendants contend that the mark THE HERBAL CHEF is generic and, thus, not entitled to protection. Mot. at pp. 12-16; *see also, e.g., Zobmondo Entm't, LLC,* 602 F.3d at 1113 ("Generic marks are not eligible for trademark protection.") (citations omitted); *Surgicenters of Am., Inc., v. Med. Dental Surgeris, Co.,* 601 F.2d 1011, 1012 (9th Cir. 1979) (generic marks "cannot become a trademark under any circumstances").

In support, Defendants note that the USPTO rejected Plaintiff's trademark application twice, determining that the mark THE HERBAL CHEF "merely describes a feature, characteristic, function, quality, ingredient, purpose or use of applicant's services." *See* May 15, 2018 USPTO Office Action, Dkt. No. 52-4 at 4. Defendants further analyze the dictionary definitions of "herbal" and "chef" to show they are generic terms devoid of distinctiveness, even when combined. *See* Mot. at 15 (noting definition of "herbal" is "connected with herbs, or made from herbs" and that third dictionary definition of "herb" is "marijuana").

Finally, Defendants point to the testimony of Plaintiff's founder, Christopher Sayegh, in which he characterizes himself, in part, as a "chef that cooks with herbs" and "the [original] Herbal Chef." *Id.* at p. 15 (citing Sayegh Dep.[3] at 22:21-26:15). Defendants argue that Mr. Sanyegh's admission that he "is a chef that cooks with herbs" means that the mark THE HERBAL CHEF is generic because it answers the question "what are you?" Mot. at p. 15; Reply at p. 4.

To establish the validity of its unregistered mark, Plaintiff cites Mr. Sayegh's declaration, which states that Plaintiff educates, consults, and advocates in the cannabis industry and has "become a pioneer in the educational space of cooking, cannabis, and the combination of both." *See* Sayegh Decl., ¶¶ 2, 4-6, Dkt. No. 58-5. Mr. Sayegh

---

[3] "Sayegh Dep." refers to the partial transcript for the deposition of Christopher Sayegh located at Dkt. No. 58-3.

further states that his company "is very popular" and that customers attending its events "may learn about a wide variety of topics which may include: food preparation or presentation, cannabis, infusion, plant medicine, extraction." *Id.* ¶¶ 7, 11. Plaintiff's Opposition further, (1) cites Mr. Sayegh's testimony that his company's mission is to educate customers regarding cannabis, (2) spends several pages vaguely detailing those educational efforts, and (3) concludes without citation that "factual issues remain as to whether THE HERBAL CHEF is generic, descriptive, or suggestive." Opp. at pp. 2-5.

Plaintiff then argues that controlling precedent precludes summary judgment due to Defendants' purported failure to marshal evidence establishing genericness. Opposition at pp. 12-13 (citing *Filipino Yellow Pages, Inc.,* 198 F.3d at 1147). But Plaintiff ignores that "the mark at issue in" *Filipino Yellow Pages, Inc.* was "not registered" and thus, the plaintiff in that case was required to "prove that 'Filipino Yellow Pages' is *not* generic" to avoid judgment as a matter of law. 198 F.3d at 1151 (emphasis in original).

Due to this critical distinction, the Ninth Circuit noted that "[i]t does not appear that [plaintiff] has offered evidence of nongenericness sufficient to rebut even the fairly modest evidence of genericness offered by [defendant]," and determined that "it would seem that under the 'who-are-you/what-are-you' test, the term 'Filipino Yellow Pages' is generic." *Id.* The Ninth Circuit continued, "[e]ven assuming that [defendant's] other evidence of genericness would be insufficient to sustain a genericness finding by itself, it certainly suggests that 'Filipino Yellow Pages,' if descriptive, would be the feeblest of descriptive marks… Such a weak descriptive mark could be a valid trademark only with a strong showing of strong secondary meaning." *Id.* (internal citations omitted).

Plaintiff here offers far less to establish nongenericness than the plaintiff in *Filipino Yellow Pages, Inc.*, despite bearing the same burden due to the USPTO's denial of both marks. Plaintiff provides no deposition testimony aside from Mr. Sayegh's and no expert evidence. *See generally id.* Plaintiff does not address the USPTO's rejection

8.

of its trademark application or cite authority supporting that its founder's conclusory testimony concerning the mission and success of The Herbal Chef is in any way relevant to the distinctiveness of the mark THE HERBAL CHEF. *Id.* While Plaintiff is correct that *Filipino Yellow Pages Inc.* stressed that the Ninth Circuit places "significant but not controlling weight on the dictionary definitions" in assessing a mark's distinctiveness, it fails to persuasively challenge the dictionary definitions analyzed by Defendants in their Motion and the USPTO in denying Plaintiff's trademark application. 198 F.3d at 1148; s*ee also* Dec. 4, 2018 USPTO Office Action, Dkt. 52-6, Ex. 7 (employing dictionary definitions to convey mere descriptive nature of the mark THE HERBAL CHEF).

As permitted by the Ninth Circuit and in the absence of any countervailing evidence set forth by Plaintiff, this Court finds the USPTO's classification decision persuasive and likewise concludes that the mark THE HERBAL CHEF "merely describes a feature, characteristic, function, quality, ingredient, purpose or use of applicant's services." *Id.; see also Lahoti*, 586 F.3d at 1199 (in analyzing whether a mark is descriptive or suggestive, noting that "[d]eference to the PTO's classification decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue.") (citations omitted). Namely, the mark THE HERBAL CHEF denotes that Plaintiff primarily provides customers with a chef "who specializes in cooking with infused marijuana." Dec. 4, 2018 USPTO Office Action, Dkt. 52-6, Ex. 7.

For these same reasons, the fact that Defendants hold a registered trademark for "Herbal Chef" does not bear on the Court's distinctiveness analysis. Defendants offer goods in distinct classes—Baking dishes; Pot holders; Trivets; Electric food processors—whereas Plaintiff's application pertains to the "meal preparation, catering services, private dining" class. *Compare* Defs.' Trademark Registration, Dkt. No. 52-6, Ex. 5 *with* Pl.'s Trademark Application, Dkt. No. 52-6, Ex. 9. Again, as the USPTO explained, Plaintiff's "educational and entertainment services relate[] to cooking infused with marijuana" and, thus, the mark THE HERBAL CHEF is "merely

descriptive" of Plaintiff's services. *See* Dec. 4, 2018 USPTO Office Action, Dkt. 52-6, Ex. 7. No such logic applies to Defendants' goods sold under the "Herbal Chef" brand. In other words, successful registration of Defendants' "Herbal Chef" mark does not support that Plaintiff's THE HERBAL CHEF mark is distinctive because Defendants sell *products* that bear no resemblance to the cannabis-related *services* offered by plaintiff—Plaintiff and Defendants do not produce "similar products" or "similar services" such that a presumption of validity may apply. *Lahoti*, 586 F.3d at 1197 ("[N]early identical marks used for *similar products* may be viewed in a common light when the PTO has found one of them to be suggestive.") (citations omitted) (emphasis added).

In sum, Plaintiff has offered no justification to depart from the USPTO's reasoning in rejecting Plaintiff's trademark application due to the mark THE HERBAL CHEF'S lack of distinctiveness. Because the Court concludes below that Plaintiff has failed to show secondary meaning, it need not determine whether Plaintiff's mark is generic or descriptive:

> The difference between a generic mark and the weakest of descriptive marks may be almost imperceptible. In this case, we do not need to determine whether "Filipino Yellow Pages" is a generic or very weak descriptive term. For the reasons discussed *infra,* [plaintiff's] failure to show secondary meaning renders the term unprotectible in either case.

*Filipino Yellow Pages, Inc.,* 198 F.3d at 1151 n.5

The Court therefore determines that the mark THE HERBAL CHEF is, at most, descriptive and turns to whether Plaintiff has shown secondary meaning.[4]

**C. Plaintiff has set forth insufficient evidence of secondary meaning.**

"[A]n unregistered mark may be protected only if it is either inherently distinctive or if it has acquired 'secondary meaning.'" *See, e.g., West Coast Corvettes, Inc. v. MV Mktg., Inc.*, No. SACV-12-00269-DOC-(RNBx), 2012 WL 12882014, at *6 (C.D. Cal.

---

[4] By concluding that Plaintiff's claimed mark is generic or descriptive, the Court rejects that the mark is suggestive.

1 | Dec. 13, 2012)) (quoting *Lahoti*, 586 F.3d at 1197). To determine whether a descriptive
2 | mark has acquired secondary meaning, courts consider: "'(1) whether actual purchasers
3 | of the product bearing the claimed trademark associate the trademark with the producer,
4 | (2) the degree and manner of advertising under the claimed trademark, (3) the length
5 | and manner of use of the claimed trademark, and (4) whether use of the claimed
6 | trademark has been exclusive.'" *Yellow Cab Co. of Sacramento*, 419 F.3d at 930
7 | (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en
8 | banc)). "The test of secondary meaning is the effectiveness of the effort to create it,
9 | and the chief inquiry is directed towards the consumer's attitude about the mark in
10 | question: does it denote to him a single thing coming from a single source?" *Carter–
11 | Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970) (internal
12 | quotation marks omitted). A plaintiff's exclusive use of a mark for a sufficient period
13 | may constitute sufficient evidence of secondary meaning to survive summary judgment.
14 | *California Scents v. Surco Prod., Inc.,* 28 F. App'x 659, 663 (9th Cir. 2002) ("Five years
15 | of exclusive use is prima facie evidence of secondary meaning, and California Scents
16 | has raised a genuine issue of material fact as to the exclusivity of its use of this trade
17 | dress.") (citations omitted).

18 | As Defendants note, Plaintiff has proffered neither expert evidence nor survey
19 | data, and has even refused to produce *all* sales data on inexplicable grounds of
20 | "relevancy." SSF 4-5, 8; SGD 4 (Plaintiff's counsel stating that "simply because
21 | Plaintiff did not disclose [any sales data] for lack of relevancy does not mean it does
22 | not exist"). Aside from cursory mention in Plaintiff's recitation of legal standards,
23 | Plaintiff does not address the dispositive issue of secondary meaning in its Opposition
24 | and offers no material facts suggesting the existence of any such secondary meaning.
25 | *See generally* SGD; Opp.

26 | Moreover, Plaintiff claims that Defendants first infringed on Plaintiff's mark in
27 | January 2016 and it is undisputed that Plaintiff first used the mark in commerce in
28 | August 2015. SSF 1, 6. Hence, Plaintiff had exclusive use of the mark for five months

11.

at most, from August 2015 to January 2016, a fact that was conceded by Plaintiff's counsel at oral arguments. This period is insufficient evidence, on its own, to survive summary judgment given the corresponding lack of evidence to suggest extensive advertising and promotion. *Spark Indus., LLC v. Kretek Int'l, Inc.,* No. CV 14-5726-GW ASX, 2014 WL 4365736, at *12 (C.D. Cal. Aug. 28, 2014) (noting that "two years of exclusive use is on the low end of the spectrum" in finding insufficient evidence of secondary meaning) (citing *Cont'l Lab. Products, Inc. v. Medax Int'l, Inc.,* 114 F.Supp.2d 992, 1004–05 (S.D. Cal. 2000) (finding that four years of exclusive use did not support secondary meaning and collecting cases finding the same despite use for 9, 10, and 15 years)).

Plaintiff's counsel does attach as Exhibit 1 to his declaration what he characterizes as "excerpts of Plaintiff's Documents Production" which appear to consist of social media posts authored by Mr. Sayegh concerning events he attended or hosted. Dkt. No 58-2. At the hearing, Plaintiff's counsel cited this evidence as creating a genuine factual dispute concerning the mark THE HERBAL CHEF's secondary meaning. But even if the Court accepted that sundry social media posts submitted largely without explanation with a summary judgment motion constitutes evidence of secondary meaning, Plaintiff's counsel also conceded at the hearing that each of these posts depicts events well after Plaintiff's four-month period of exclusive use. While counsel also orally argued that The Herbal Chef's fame as allegedly evidenced in these posts *must* stem from events during the period of exclusive use, Plaintiff provides the Court with no evidence of such events and its counsel could cite no such evidence at the hearing. The Court therefore rejects Plaintiff's proposed inference and can decipher no competent evidence of secondary meaning arising from the social media posts. *Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F. Supp. 2d 1168, 1181 (N.D. Cal. 2007) ("But secondary meaning cannot emerge in a vacuum, and the undisputed evidence detailed earlier confirms that plaintiff undertook little effort to create secondary meaning during this period of exclusive use.")

Moreover, to the extent Plaintiff intends to rely on Mr. Sayegh's deposition and declaration to support secondary meaning, the Court finds those evidentiary bases unpersuasive. *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1261–63 (S.D. Cal. 2018) ("At the summary judgment stage, declarations from associates of a company or its president are minimally persuasive in showing that consumers generally have formed a similar mental impression regarding the company's mark.") (citing *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 874 (9th Cir. 2002)). Indeed, the Ninth Circuit has reasoned that "evidence of secondary meaning offered… in the declaration of [plaintiff's] founder and president" does not create a genuine issue for trial, particularly where, as here, that testimony is "vague, uncorroborated, [and] clearly self-interested." *Filipino Yellow Pages, Inc.,* 198 F.3d at 1152. Summary judgement for lack of secondary meaning evidence is even more warranted here because Mr. Sayegh is the owner of the claimed mark, in addition to the president and founder of The Herbal Chef. *Id.* (noting that application of Ninth Circuit standard that discounts president's declaration "would apply *a fortiori* to testimony by the holder of the claimed trademark himself") (emphasis in original).

Hence, summary judgment is warranted even if the mark THE HERBAL CHEF is descriptive rather than generic, as Plaintiff cites no competent evidence supporting that its claimed mark has achieved secondary meaning.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion. Defendants are **ORDERED** to file a Proposed Judgment within five days of the issuance of this Order.

The Pretrial Conference and Jury Trial dates are vacated.

**IT IS SO ORDERED.**

Dated: March 10, 2020

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

14.